[No. B112558. Second Dist.. Div. Seven. June 1. 1998.]

KIM KOLANI et al., Plaintiffs and Appellants, v.
AMITAI GLUSKA· et al., Defendants and Respondents.

**COUNSEL**

Benedon & Serlin, Douglas G. Benedon and Gerald M. Serlin for Plaintiffs and Appellants.

Blecher & Collins, John E. Andrews and James Robert Noblin for Defendants and Respondents.

**OPINION**

**NEAL, J.—**

SUMMARY

A broad covenant not to compete cannot be saved from illegality by narrowed construction. A federal statute requires that pendent state claims first asserted in a federal suit must be refiled in state court within 30 days after dismissal of the federal suit. A trial court may be required to grant leave to amend when it knows of potentially viable claims at the time it sustains a demurrer, even though plaintiff does not request leave to amend.

FACTS AND PROCEDURAL HISTORY

From sometime in 1991 until September 27, 1993, defendant and respondent Amitai Gluska was a salesperson employed by plaintiffs and appellants Kim and Uriah Kolani, doing business as The Office Place (collectively, TOP), a wholesale supplier of office products. Defendant and respondent Eastman Office Products is Gluska's subsequent employer.

In May 1993 Gluska and TOP executed a "Sales Representative Agreement" on a typed form. Gluska's name was inserted in handwriting in a blank provided for the name of the "employee." The agreement included the following:

"6. COVENANT NOT TO COMPETE

". . . during the period of employment and for a period of One year following termination of employment, . . . [Gluska] shall not within a radius of 40 miles of Van Nuys, California, for his . . . own account or for or with any other person or entity whatsoever which [*sic*] engages in any business or activities competitive with [TOP], solicit, interfere with, compete with in any manner or endeavor to entice away from [TOP] any person or entity of any kind whatsoever which [*sic*] was or is a client or customer of [TOP] or any potential client or customer with which [TOP] was actively engaged in sales or promotional efforts.

"[Gluska] shall not approach any such client, customer or potential customer for such purposes or knowingly cooperate with the taking of any such action by any other person or entity.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"Should a court . . . determine that such a term or area is either unfair or commercially unreasonable, the court . . . shall fix such lesser term or area as to render this Paragraph 6 enforceable in conformance with law and equity."

Gluska quit on September 27, 1993. On November 19, 1993, Eastman sent a letter to various former TOP customers who had placed orders with Eastman advising that TOP had threatened to sue if Eastman filled the orders, and that Eastman accordingly would forgo serving the customers for 180 days.

On September 27, 1994, TOP sued Gluska in federal court. The 11-count complaint asserted claims for violation of RICO (the Racketeer Influenced and Corrupt Organizations Act), breach of contract, intentional and negligent interference with prospective advantage, fraud, intentional infliction of emotional distress, slander and trade libel.

On June 20, 1996, the federal district court granted Gluska's motion for summary judgment on eight counts, and dismissed the state law counts for breach of contract, and intentional and negligent interference with prospective advantage, declining to exercise "supplemental" jurisdiction over these claims.[1]

On September 6, 1996, 78 days after dismissal of the federal suit, TOP filed the present action reasserting verbatim the claims for breach of contract and intentional and negligent interference with prospective advantage. The contract count alleged Gluska breached the covenant not to compete by soliciting TOP's customers after leaving TOP's employ. This count further alleged that Gluska took TOP's confidential documents when he left, including "confidential customer lists, client pricing information, sales reports, marketing strategy and other confidential documents."

On March 27, 1997, the trial court sustained the respondents' demurrers to the complaint. The trial court held that the contract count was fatally flawed because the covenant not to compete was void and unenforceable and that the tortious interference claims were untimely. Both at the oral hearing and in its written order the trial court indicated that TOP might have viable causes of action for theft or misappropriation of confidential information or

---

[1]Under 28 United States Code section 1367, federal district courts have "supplemental jurisdiction" over state law claims related to federal law claims over which these courts have original jurisdiction. "Supplemental jurisdiction" is similar to what formerly was known as "pendent" jurisdiction. Section 1367(c) authorizes the court to decline to exercise supplemental jurisdiction after all related federal law claims are dismissed.

trade secrets. However, TOP did not request leave to amend, either in its brief or in oral argument, and the court sustained the demurrers without leave to amend.

This appeal followed.

## DISCUSSION

1. *The covenant not to compete was void and unenforceable.*

■ Business and Professions Code section 16600 declares that every contract by which anyone is restrained from engaging in their lawful trade, business or profession is to that extent void. Business and Professions Code sections 16601 and 16602 permit broad covenants not to compete in two narrow situations: where a person sells the goodwill of a business, and where a partner agrees not to compete in anticipation of dissolution of a partnership. The latter sections reinforce the conclusion that covenants not to compete in contracts *other than* for sale of goodwill or dissolution of partnership are void.

Narrower contractual restraints on a departing employee, which prohibit him/her from using confidential information taken from the former employer, have been held to be lawful. *Gordon* v. *Landau* (1958) 49 Cal.2d 690, 694 [321 P.2d 456]: "It clearly appears from the terms of the contract that it did not prevent defendant from carrying on a weekly credit business or any other business. He *merely agreed not to use plaintiff's confidential lists* to solicit customers for himself for a period of one year following termination of his employment. Such an agreement is valid and enforceable." (Italics added.)

The clause here involved is not narrowly tailored, like the one in *Gordon.* Instead it is an outright prohibition on competition and is void, as the trial court found.

Appellants urge the court to "save" the noncompete clause by construing it as merely barring misappropriation of confidential customer lists and trade secrets. They argue that the parties expressly agreed that the court could narrow the clause.

■ Generally, courts reform contracts only where the parties have made a mistake (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 382, p. 347), and not for the purpose of saving an illegal contract. (*Id.,* § 386, p.

350). Illegal contracts are void. (*Id.*, § 441, p. 396). Several decisions "saved" covenants not to compete by narrowly construing them, but these covenants were contained in agreements to sell *goodwill*, where such covenants are permitted under Business and Professions Code section 16601. (*General Paint Corp.* v. *Seymour* (1932) 124 Cal.App. 611, 614, [12 P.2d 990]; *John F. Matull & Associates, Inc.* v. *Cloutier* (1987) 194 Cal.App.3d 1049 [240 Cal.Rptr. 211]; see 1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 571, p. 512, and additional cases cited there.)

 The trial court here properly concluded that it should not rewrite the broad covenant not to compete into a narrow bar on theft of confidential information. There was no allegation of any mistake justifying reformation. The "savings" clause in the agreement authorizes a court to revise the noncompete covenant if it is "unfair" or "commercially unreasonable," not if it is illegal. No case we have found approves of the rewriting of an illegal covenant not to compete in the manner proposed here.

Further, as the trial court recognized, the policy of Business and Professions Code section 16600 would be undermined by doing so. Employers could insert broad, facially illegal covenants not to compete in their employment contracts. Many, perhaps most, employees would honor these clauses without consulting counsel or challenging the clause in court, thus directly undermining the statutory policy favoring competition. Employers would have no disincentive to use the broad, illegal clauses if permitted to retreat to a narrow, lawful construction in the event of litigation.

The trial court did not err in sustaining the demurrer to TOP's contract count without leave to amend.

## 2. *The interference claims were barred by the statute of limitations.*

 Appellants agree that their claims for interference with prospective advantage are subject to a two-year limitations period. (See Code Civ. Proc., § 339; *Guess, Inc.* v. *Superior Court* (1986) 176 Cal.App.3d 473, 478 [222 Cal.Rptr. 79].) They further agree that these claims accrued November 19, 1993. Appellant's state action was filed more than two years later, and thus these causes of action are time-barred unless saved by a sufficient period of tolling between accrual and filing.

Appellants argue their claims are saved by 28 United States Code section 1367(d), a federal tolling statute, and in the alternative by California's common law equitable tolling doctrine. Section 1367(d) states: "The period

of limitations for any claim asserted under subsection (a) [which confers supplemental jurisdiction over pendent claims related to federal claims] . . . shall be tolled while the claim is pending and *for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.*" (Italics added.)

28 United States Code section 1367, including subdivision (d), was enacted in 1990. The application of subdivision (d) is an issue of first impression in California. Because subdivision (d) codifies principles of "equitable tolling" found in state case law, it will be helpful to review California's case law doctrine of equitable tolling before construing subdivision (d).

The "equitable tolling" doctrine "reliev[es] plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage." (*Addison* v. *State of California* (1978) 21 Cal.3d 313, 317 [146 Cal.Rptr. 224, 578 P.2d 941] [statute of limitations tolled while state law claims were pending in federal court].) The court said: ". . . since the federal court action was timely filed, defendants were notified of the action and had the opportunity to begin gathering their evidence and preparing their defense. No prejudice to defendants is shown, for plaintiff's state court action was filed within one week of the dismissal of the federal suit. To apply the doctrine of equitable tolling in this case, in our view, satisfies the policy underlying the statute of limitations without ignoring the competing policy of avoiding technical and unjust forfeitures." (*Id.* at p. 319.)

As summarized in *Addison,* the requirements for equitable tolling are that defendant must receive timely notice of the claims, defendant must suffer no prejudice, and plaintiff must act reasonably and in good faith. (21 Cal.3d at p. 319.)

28 United States Code section 1367(d) codifies the tolling doctrine and applies it in all supplemental jurisdiction cases where the pendent state claims are dismissed without prejudice. Two of the three requirements for "equitable tolling" are met in all such cases. Defendant receives notice of the claims, from the filing and service of the federal suit. Defense is not prejudiced, since defendant, if diligent, will interview witnesses and gather evidence to meet the claims in the federal suit.

The third requirement, reasonable conduct by plaintiff, is addressed by 28 United States Code section 1367(d)'s requirement that the second suit be filed within 30 days after dismissal of the pendent claims. This part of subdivision (d) substitutes a bright-line rule in place of the case-by-case

analysis of "reasonableness" found in the equitable tolling cases. It affords plaintiff a reasonable time within which to get the case refiled. At the same time, it upholds the policy of the statute of limitations, by *limiting* the time to refile, and thus assuring that claims will be *promptly* pursued in any subsequent action.

Here, appellants did not refile in state court until *78 days* after their federal suit was dismissed. California has no statute affording a "grace period" longer than 30 days and accordingly, 28 United States Code section 1367(d) does not save appellant's claims.

Appellants urge us to interpret 28 United States Code section 1367(d) to *exclude from the limitations computation the entire interval that their federal claims were pending.* Appellants filed their federal suit about nine months after the claims accrued, and thus, if their argument is accepted, were allowed *more than a year following dismissal of the federal claims to refile in state court.*

This construction is unreasonable. Such a construction is not needed to avoid forfeitures, because 30 days is ample time for a diligent plaintiff to refile his claims and keep them alive. Further, such a construction does significant harm to the statute of limitations policy. As the Supreme Court said in *Wood* v. *Elling Corp.* (1977) 20 Cal.3d 353, 359 [142 Cal.Rptr. 696, 572 P.2d 755]:

"[T]he law of California is consistent with what has been stated to be the rule in the majority of jurisdictions. 'In the absence of a statute, a party cannot deduct from the period of the statute of limitations applicable to his case the time consumed by the pendency of an action in which he sought to have the matter adjudicated, but which was dismissed without prejudice to him . . . .' [Citation.]

"This rule, of course, is wholly in accord with the policy in favor of the prompt prosecution of legal claims, whereas the proposition advanced by plaintiff might well operate in defiance of that policy." (20 Cal.3d at p. 359.)

Consistent with this analysis, the leading cases finding an equitable tolling have involved short intervals between dismissal and refiling. (*Addison* v. *State of California, supra,* 21 Cal.3d 313 [state case filed *before* federal case dismissed]; *Bollinger* v. *National Fire Ins. Co.* (1944) 25 Cal.2d 399, 410 [154 P.2d 399] [second suit commenced within three days after dismissal of first]; *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247 [104

Cal.Rptr. 761, 502 P.2d 1049] [second proceeding filed four days after first dismissed]; *Elkins* v. *Derby* (1974) 12 Cal.3d 410 [115 Cal.Rptr. 641, 525 P.2d 81, 71 A.L.R.3d 839] [state action filed about thirty days after workers' compensation case dismissed].)

28 United States Code section 1367(d) does not allow plaintiff to "tack" onto the limitations period the full time during which his federal action was pending.

Appellants' claims are not saved by the "equitable tolling" doctrine. As shown above, plaintiff's reasonable promptness in refiling is necessary for relief under that doctrine. Appellants here made no showing justifying the 78-day delay from dismissal of the federal suit to refiling in state court. No substantial time was needed to frame the state claims, which were repeated verbatim from the federal complaint. Likewise, appellants' claim that they were considering an appeal from the federal suit does not demonstrate reasonableness. They made no showing why this decision could not have been made within 30 days, and moreover, they could have filed a "protective" state court complaint within 30 days if for some genuine and substantial reason they had not yet decided upon a federal appeal.

Finally, what conduct is "reasonable" under the "equitable tolling" doctrine must be assessed in light of the existence of the 30-day "grace period" in 28 United States Code section 1367(d). It was not "reasonable" for appellants to refile much later than 30 days after the prior dismissal, in the face of section 1367(d)'s express 30-day requirement, absent a state statute extending that period, and absent some extraordinary circumstance justifying the delay.

The trial court correctly ruled that the statute of limitations bars appellant's claims for interference with prospective advantage.

3. *Leave to amend should have been granted to plead claims for theft of confidential information and trade secrets.*

Code of Civil Procedure section 472c, subdivison (a) provides: "When any court makes an order sustaining a demurrer without leave to amend the question whether or not such court abused its discretion in making such an order is open on appeal *even though no request to amend such pleading was made*." (Italics added.)

Thus, despite appellant's failure to attempt amendment in the trial court, appellant is entitled by statute to argue here that leave to amend should have been granted.

■ Leave to amend is in general required to be liberally granted (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 939 [101 Cal.Rptr. 568, 496 P.2d 480]), provided there is no statute of limitations concern. Leave to amend may be denied if there is prejudice to the opposing party, such as delay in trial, loss of critical evidence, or added costs of preparation. (*Hirsa v. Superior Court* (1981) 118 Cal.App.3d 486, 490 [173 Cal.Rptr. 418].)

■ Here, the trial court's dismissal order explicitly acknowledged that appellants might have claims for misappropriation of confidential information and trade secrets. As appellants point out, the statute of limitations on such claims is three years. (Civ. Code, § 3426.6.) Appellant's state complaint was filed less than three years after the alleged misappropriation, and though it contained no separate cause of action captioned as "misappropriation of trade secrets," it specifically alleged that Gluska "removed confidential customer lists" and other confidential information. Thus, new claims for misappropriation of trade secrets would "relate back," for limitations purposes, to the date of filing of the original state court complaint, because these claims would be based on the same operative facts as alleged in the original complaint. (*Barrington v. A. H. Robins, Co.* (1985) 39 Cal.3d 146, 151-152 [216 Cal.Rptr. 405, 702 P.2d 563].)

Thus, although the trial court correctly disposed of all claims which appellants *did* assert, it should have allowed amendment to assert a cause of action for misappropriation of trade secrets, absent some showing of prejudice (no prejudice analysis was made because appellants did not seek leave to amend).

We understand why the trial court acted as it did. We reiterate: Appellants did not ask the trial court for leave to amend. Generally, failure to raise an issue or argument in the trial court *waives* the point on appeal. For example, failure to object to evidence waives the objection. (Evid. Code, § 353, subd. (a).) Documents and facts not presented to the trial court generally cannot be considered on appeal. (*Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632 [227 Cal.Rptr. 491].) A persuasive argument can be made that a similar rule should govern where a party doesn't ask the trial court for leave to amend. Trial judges aren't usually expected to give the parties advice, or counsel them how to plead. A rule requiring a request to amend as a predicate for relief on appeal would conform to the sound general principle that matters not raised in the trial court are waived on appeal. However, the Legislature in Code of Civil Procedure section 472c, subdivision (a) enacted the contrary rule, and we are bound by it.

## DISPOSITION

The judgment is affirmed insofar as it sustained demurrers, without leave to amend, to causes of action for breach of contract and intentional and

negligent interference with prospective advantage. It is reversed insofar as it precludes filing of an amended complaint alleging a cause of action for misappropriation of confidential information, and remanded to permit opportunity for appellants to plead such a cause of action. The parties shall bear their own costs on appeal.

Lillie, P. J., and Woods, J., concurred.